[Crim. No. 689. Fourth Dist. Oct. 24, 1950.]

THE PEOPLE, Respondent, v. PASCUAL HERNANDEZ et al., Appellants.

Raymond E. Hodge and Frank T. Bates for Appellants.

Fred N. Howser, Attorney General, and Stanford D. Herlick, Deputy Attorney General, for Respondent.

BARNARD, P. J.—This appeal involves three of five defendants who were tried together. The other two have separately appealed, on varying grounds and with separate counsel and briefs. The factual background is the same in all three appeals.

On the night of August 20, 1949, the complaining witness, who was 56 years old and a grandmother, was driving on a paved road near San Bernardino when her car stalled. As she was walking toward her home, carrying her purse, the defendants came along in an old car and stopped. She became alarmed and started to run. Some of the defendants ran after her and dragged her into their car. Her purse, which con-

tained $10 and other articles, was under her arm when she was placed in the car, but after she was slapped and her arms jerked by various defendants it was on the seat between herself and the driver. The car was driven off the highway and over a dirt road to a spot in the Santa Ana wash which was surrounded by cactus and sagebrush. Here, all of her clothing was torn and ripped off, her girdle and slip being cut with a knife, and she was struck repeatedly. She was taken from the car and thrown to the ground in a nude condition. While this was going on, her wrist watch was jerked from her arm and she saw one of the defendants with her purse. She never saw the purse again. After being thrown to the ground she was hit on the head, and each defendant in turn proceeded to have sexual intercourse with her. While each defendant did this another of the defendants, in turn, committed a violation of section 288a of the Penal Code, with her as the victim. While these acts were taking place the other defendants were holding her legs and arms. During this time the defendants twisted her breasts, hit her on various parts of the body leaving black and blue marks, and threatened to bash her brains out. She was severely beaten and mistreated in other ways that need not be mentioned.

When the defendants were finished, about 2 a. m., they threw her slip to her and drove off, telling her not to tell the authorities and saying they lived in Los Angeles. She draped the slip around her and tried to get away, hiding in bushes at times in fear that the defendants would return. After taking a circuitous route she came to a dairy about 4 a. m. and appealed to a milker for help. He called his employer who phoned to the sheriff's office. At that time she was dirty, bruised and hysterical, and in a nude state with the exception of what was described as a "blue rag." Two officers who soon arrived also testified as to her condition. They took her to the sheriff's office where she was given a blanket and then taken to a hospital where she was examined by a doctor. His findings fully confirmed her story. The officers investigated at and near the scene of the crimes and found tire marks, footprints, and other indications confirming what had happened. While they found two or three small articles of her clothing there they were unable, after repeated searches, to find the victim's shoes, stockings, dress or panties. The purse, which was distinctive in character, was never found. Some days later the woman's wrist watch was found in the sand about 500 feet from the scene of the crimes.

The five defendants, who lived in a small community near San Bernardino, were arrested the next day. All five of them were questioned by the officers, the questions and answers being taken down in shorthand and written up. By stipulation, these statements were admitted in evidence. Four of the defendants had thus admitted the sex acts and rather fully confirmed the story told by the complaining witness. One defendant, Floriano, claimed to have "blacked out" from drinking too much and to be unable to remember anything that occurred which was material to these crimes.

The first count of the information charged all five defendants with the crime of kidnaping under section 209 of the Penal Code, it being alleged that the defendants kidnaped the complaining witness for the purpose of robbery and that she was subjected by them to bodily harm. In Count II, they were all charged with the crime of robbery. In other counts they were each charged with rape, and with violation of section 288a of the Penal Code. Before the trial, the three defendants involved in this appeal pleaded guilty to one charge each of rape and of sex perversion. They went to trial on the other charges of the complaint, and the other two defendants went to trial on all counts. The jury found all of the defendants guilty on the respective counts submitted to it, except that each defendant was found not guilty on the charge of robbery. With respect to Count I the jury also found, as to each defendant, that the person kidnaped suffered bodily harm and that the defendant should suffer imprisonment for life without the possibility of parole. Motions for a new trial were denied and each defendant was sentenced to state prison for the term prescribed by law as to each count applicable to him, with the exception of Count II on which they were acquitted, the sentences on some counts being made to run concurrently with others. Each defendant appealed from the judgment and from the order denying his motion for a new trial.

The main contention of these appellants is that the evidence is insufficient to support the verdicts on the kidnaping charge. For obvious reasons, the sufficiency of the evidence with respect to the sex crimes is not questioned. In that regard the evidence discloses not only an unusually aggravated case, but an unusually complete and conclusive degree of proof. It is contended, however, that the kidnaping was committed solely with a sexual intent; that there is no evidence of any intent to kidnap for the purpose of robbery; and that the evidence is

insufficient to show an intent to rob, within the meaning of section 209 of the Penal Code, since the jury found the defendants not guilty on the robbery count. It is further contended that under that section there cannot be a kidnaping for the purpose of robbery unless a robbery or attempted robbery was intended at the time of the kidnaping; that a charge of robbery necessarily includes any attempt to commit robbery; and that the acquittal on the robbery charge necessarily acquitted the defendants of having made any such attempt. It is argued that in *People* v. *Brown,* 29 Cal.2d 555 [176 P.2d 929] and *People* v. *Tanner,* 3 Cal.2d 279 [44 P.2d 324], and similar cases, a conviction under section 209 was sustained because the defendants were also found guilty of robbery; that for that reason many of the views expressed in *People* v. *Brown* are only dicta; and that under the holding in *People* v. *Chessman,* 35 Cal.2d 455 [218 P.2d 769], there cannot be a kidnaping for the purpose of robbery unless a robbery or attempted robbery was contemplated or intended at the time the kidnaping occurs.

By its terms section 209 applies, so far as material here, to anyone who seizes, kidnaps or carries away any individual "with intent to hold or detain, or who holds or detains, such individual . . . to commit . . . robbery." While a specific intent to commit robbery is here involved, a completed robbery is not necessarily required. It could not well be contended that the evidence here is not sufficient to show an intent to rob, if it may be deemed to have been accepted and believed by the jury. There is ample evidence that a wrist watch, a purse containing a little over $10 and some other articles, and most of her clothes were taken from the person or immediate presence of the victim against her will and by means of force or fear. (Pen. Code, § 211.) While the watch was later found some distance away, the purse and money and the clothes were never found. An intent to rob may reasonably be inferred from the abundant evidence that these articles were actually taken from the victim and carried away by the defendants.

The main contention is that this evidence, which would otherwise be sufficient for the purpose, may not be considered because of the acquittal, on the other count, of the charge of robbery. An acquittal on the robbery charge does not necessarily eliminate this evidence from consideration in connection with the kidnaping charge, and is not conclusive on the sufficiency of the evidence with respect to the intent

of the defendants in carrying away and detaining the victim. The elements of the two crimes, robbery and kidnaping with intent to rob, are not identical and are clearly severable. Under general rules, where two offenses which grow out of the same transaction are severable and distinct, an acquittal under one does not exempt from punishment under the other (22 C.J.S., 428.) Section 954 of the Penal Code specifically provides in part that ''A verdict of acquittal on one or more counts shall not be deemed or held to be an acquittal of any other count.'' This section was held controlling in *People* v. *Amick*, 20 Cal.2d 247 [125 P.2d 25]. As was there said: ''such inconsistent verdicts may be caused not by the confusion but by the mercy of the jury, of which the appellant can neither complain nor gain further advantage.''

The evidence is sufficient to show an intent to rob existing during the period covered by the kidnaping and detention of the victim, whether or not it was technically sufficient to show a robbery. It is immaterial whether or not an intent to rob existed at the beginning. ▆ Whatever the original intent was, section 209 is broad enough to cover an intent to rob formed while the kidnaping and the detention were in progress. As was said in *People* v. *Brown*, 29 Cal.2d 555 [176 P.2d 929]:

''This section makes it unnecessary to determine whether the kidnaper intended to commit extortion or robbery at the time of the original seizure or carrying away. It is sufficient if the extortion or robbery was committed during the course of the abduction. Thus, whatever may have been the original motive of the kidnaping, if the kidnaper commits extortion or robbery during the kidnaping, he 'holds or detains' his victim 'to commit extortion or robbery' within the meaning of section 209.''

This elderly woman was carrying her purse when first seen by the defendants, and the intent to rob her may well have been a moving cause in taking her to a lonely spot where she would be handicapped in giving an alarm. Whether or not this is true, it sufficiently appears that such an intent existed during the time she was detained. ▆ The fact that the jury acquitted on the robbery count in no way indicates that it disbelieved all of the evidence, with regard to the taking of property, or that it did not believe the evidence indicating that the defendants, during the detention, intended to take these articles from the victim. In view of the overwhelming evidence that these articles were actually taken away, and

were not left at the scene, it could not reasonably be supposed that the jury entirely disbelieved that evidence. It may well be that the jury thought that a conviction also on the robbery charge would be too near a double conviction for the same act. Since the watch may have been later thrown away, and since there was some evidence that the purse was at one time left on the seat of the car, the jury may have entertained a doubt as to whether robbery was technically proved. From a factual as well as a legal standpoint, it cannot be said under these circumstances that the failure to convict on the robbery charge establishes the fact that the jury refused to believe the convincing evidence of an intent to rob.

The jury was fully and carefully instructed as to the elements required for a conviction under section 209, including an intent to rob, the matter was argued at great length, and the jury found the defendants guilty on that charge and also made the additional specific findings which were necessarily based on the existence of an intent to commit robbery. It clearly appears that the jury accepted the evidence as showing the facts required by section 209, and it cannot reasonably be questioned that this jury knew exactly what it was doing. The evidence, with the reasonable inferences therefrom, is entirely sufficient to support the verdicts on the kidnaping charge under section 209.

These appellants next contend that two of the instructions given contradicted each other, and must have confused the jury. The first of these stated that there are two forms of kidnaping in this state, the one charged against the defendants being that defined in section 209 of the Penal Code, and another sometimes referred to as simple kidnaping, as defined in section 207 of the Penal Code; that in the one here charged against the defendants a specific intent is an essential element of the crime; that if the jury should be convinced beyond a reasonable doubt that the defendants forcibly took and carried another person away against her will and consent, but had a reasonable doubt whether this was done with the intent to hold and detain such person for the purpose of committing robbery, it should give the defendants the benefit of the doubt and not convict them under section 209; and that, in such event, the jury would have no duty with respect to the matter of punishment and should say nothing about punishment in its verdict. The other of these instructions set forth the rule above quoted from *People* v. *Brown*, 29 Cal.2d

555 [176 P.2d 929], in almost the exact language of that quotation.

The appellants concede that the first of these instructions was a correct statement of the law, "and apparently covers the law in the case," and no reason is assigned as to why the second is not also correct. While it is argued that these instructions are contradictory and necessarily confusing, no reason for that conclusion is given, and we are able to find none. Apparently, the objection is that the jury did not follow these instructions as the appellants, after referring to two other instructions relating to the necessity for a specific intent with respect to this kidnaping charge, state that: "Our contention is that if the jury had followed these two instructions they could not have found the defendants guilty of kidnaping." This contention is clearly erroneous. A large number of instructions were given, of which these instructions were a part. The instructions as a whole fully advised the jury on all elements of both forms of kidnaping, and we are unable to see that the ones complained of were either contradictory or confusing. Neither error nor prejudice appears in this connection.

It is next contended that the district attorney was guilty of misconduct during his argument to the jury "in that he erroneously quoted the law of California under Sec. 209 P.C." In the matter objected to, the district attorney stated that the first count of the information did not specify any particular property in connection with the intent to commit robbery which was therein involved. An objection was made that this statement did not apply to the robbery count (Count II). The district attorney then went on to state that the second count of the information was the crime of robbery and charged the defendants with taking specific items consisting of a purse, money and a watch. Neither misconduct nor prejudice appears.

The final contentions are that the court erred in denying the motions for a new trial "for the reasons above expressed" and that in order to sustain a conviction under section 209 Penal Code there must have been "at the time of such alleged kidnaping a definite and specific intent to rob or extort." These contentions are sufficiently covered in connection with the other points raised.

The judgments and orders appealed from are affirmed.

Griffin, J., concurred.