[Crim. No. 4766.   Second Dist., Div. Three.   June 30, 1952.]

THE PEOPLE, Respondent, v. HARRY M. WHITEHURST, Appellant.

Albert C. S. Ramsey and Milton Emlein for Appellant.

Edmund G. Brown, Attorney General, and Stanford D. Herlick, Deputy Attorney General, for Respondent.

VALLÉE, J.—Defendant was charged in four counts with (1) a violation of section 288 of the Penal Code, lewd and lascivious act on the body of a child 10 years of age (Count I); (2) a violation of section 288(a), copulation of the sexual organ of the same child (Count II); (3) a violation of section 286, sodomy on the same child (Count III); a violation of section 207, kidnaping the child (Count IV). He was convicted by the court, sitting without a jury, of the offense charged in Count I, and acquitted of the offenses charged in Counts II, III and IV. He was found not to be a sexual psychopath. Imposition of sentence was suspended and probation granted. He appeals from the order denying his motion for a new trial.

Nancy, the complaining witness, testified to facts constituting the act charged in Count I. No purpose would be

served in relating her testimony in detail. She testified that defendant committed lascivious acts on her body which could not have been done for any purpose other than gratifying the lust and passions of defendant.

Shortly after 7 o'clock in the evening of April 13, 1951, defendant induced Nancy, who was returning home from an errand, to enter his automobile by telling her he was a juvenile officer, it was late for her to be out, he would have to talk to her folks and would drive her home. It was dark. Defendant drove past Nancy's street and continued on. As he drove he committed lascivious acts. He raised the windows, removed her undergarments, stopped the car on three occasions, and each time committed other acts. He then drove to a point near Nancy's home, gave her a dime and two nickels, told her not to tell her mother, let her out, and she went home. When Nancy entered the house tears were streaming down her face, her eyes were red, her face flushed, she was upset and nervous, and appeared to be frightened. She told her mother she had something awful to tell her; that a man had picked her up and "took" her away and "did bad things" to her. Her mother telephoned the police immediately. The police arrived in four or five minutes, and Nancy told them what had happened. Defendant was apprehended by the police within about a half hour.

A physician examined Nancy about 9:30 that evening at the request of the investigating officers. Called by defendant, he testified that Nancy was calm and rather relaxed for one of her age undergoing an examination; she was still in childhood; there were no signs of trauma; there was no evidence of dampness, wetness, irritating discharge, mucous, spermatazoa, or semen; there were no stains on her clothing. There was an irritated and reddened appearance caused by inflammation. There was no evidence of rape.

The only ground urged for reversal is that the testimony of the child, Nancy, was "so inherently improbable and incredible that it amounted to no evidence at all."

█ The requirement that the State must prove the defendant guilty beyond a reasonable doubt is applicable in, and primarily the concern of, the trial court. A reviewing court will not hold unsupported the trial court's finding of guilt merely because it might reasonable draw different inferences from those the trial court reasonably drew, or might not be convinced beyond a reasonable doubt of the guilt of the defendant. (*People* v. *Kerr*, 37 Cal.2d 11, 15 [229 P.2d

777] ; *People* v. *Tollack,* 105 Cal.App.2d 169, 172 [233 P.2d 121].)  It is the trier of the fact which must be persuaded beyond a reasonable doubt of the guilt of the defendant. (*People* v. *Smith,* 35 Cal.App.2d 73, 76 [94 P.2d 633].)

■ A reviewing court cannot reject testimony of a witness that has been believed by the trier of the fact unless it is a physical impossibility that it be true, or its falsity is apparent without resorting to inferences or deductions. (*People* v. *Huston,* 21 Cal.2d 690, 693 [134 P.2d 758].)

■ In order to say that testimony is inherently improbable it must appear that what was related or described could not have occurred. (*People* v. *Klinkenberg,* 90 Cal.App.2d 608, 627 [204 P.2d 47, 613] ; *People* v. *Thomas,* 103 Cal.App. 2d 669, 672 [229 P.2d 836].)  Testimony which merely discloses unusual circumstances is not inherently improbable. (*Kidroski* v. *Anderson,* 39 Cal.App.2d 602, 605 [103 P.2d 1000].)  ■ Testimony which is subject to justifiable suspicion does not justify reversal of a judgment. (*People* v. *Huston,* 21 Cal.2d 690, 693 [134 P.2d 758].)  ■ The effect of claimed inconsistencies and statements said to be inherently improbable and incredible, the resolution of them, the credibility of the child, and the weight to be given her testimony, were for the trial judge, not for this court. (*People* v. *Amy,* 100 Cal.App.2d 126-127 [223 P.2d 69].)  ■ The trier of fact may believe and accept a portion of the testimony of a witness, and disbelieve the remainder or have a reasonable doubt as to its effect.  ■ On appeal that portion which supports the judgment must be accepted, not that portion which would defeat, or tend to defeat, the judgment. (*People* v. *Thomas,* 103 Cal.App.2d 669, 672 [229 P.2d 836].)  ■ Unless it clearly appears that upon no hypothesis whatever is there sufficient substantial evidence to support a finding of the trier of fact, it cannot be set aside on appeal. (*People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778].)  ■ Our function is to determine whether the evidence, if believed, is of sufficient character to justify conviction.

Defendant argues that because the trial' judge acquitted him on Counts II, III and IV he necessarily disbelieved the testimony of Nancy with respect to those charges and that, having disbelieved her with respect thereto, he could not reasonably believe her testimony with respect to the lewd and lascivious conduct; that "the time element, the route taken, the medical testimony, the lack of complaint by the girl as

to alleged occurrences, her conduct and demonstrated inconsistencies in her statement all conclusively establish the inherent improbability and falseness of her story.'' In view of the principles of law we have stated, the contention of defendant is not tenable.

The fact that defendant was acquitted of the offenses charged in Counts II, III and IV is not conclusive on the sufficiency of the evidence to sustain the conviction of the offense charged in Count I. It does not prevent consideration of the evidence with respect to those counts in connection with the offenses charged in Count I, nor does it establish that Nancy's testimony as to Count I is inherently improbable or incredible. (*People* v. *Codina*, 30 Cal.2d 356, 360-361 [181 P.2d 881] ; *People* v. *Amick*, 20 Cal.2d 247, 252 [125 P.2d 25] ; *People* v. *Hernandez*, 100 Cal.App.2d 128, 132-134 [223 P.2d 71] ; *People* v. *Jollet*, 60 Cal.App.2d 245, 250 [140 P.2d 479].)

The time element is unimportant. At most, defendant's computation merely shows that Nancy was not watching the clock. She did not know how long they stopped each time. Her testimony as to the route taken differed from that testified to by a witness who followed defendant's car part of the distance and from that of defendant. The court could well have believed that Nancy's story was true with respect to defendant's conduct but that she was mistaken as to time and the exact route he drove in the dark. The physician testified that there was no evidence of any secretion which would have caused the redness or irritation. The inference is that it was caused by some external force. While the evidence indicates that no rape was committed as Nancy testified, it does not demonstrate that defendant did not commit the acts of which he was found guilty. She testified there was no penetration. Nancy complained to her mother immediately upon arriving at home.

Nancy's testimony was corroborated in important particulars. Her mother and another witness testified that when she arrived home she was crying, her face was flushed, her eyes were red, she was nervous and upset, and appeared frightened. She pounded on the door to be let in instead of using a knocker on the door. She complained to her mother immediately, and her mother telephoned the police. Later that evening her mother examined her and found a red and irritated condition. Nancy had the dime and two nickels defendant had given her. She did not have them

when she left on the errand. A witness, Morgan, saw defendant's car with Nancy standing beside it. After Nancy got in Morgan became suspicious, circled the block, saw the lights on defendant's car switched off, and saw it pull over to the curb. Morgan drove around and then saw defendant's car moving with the lights on. He saw Nancy in the car and took down the license number. He lost defendant's car at a traffic signal and then phoned the police. Nancy's fingerprints were found on the right front vent-window of defendant's car. Defendant testified that when he first saw Nancy he was having trouble with his car and had her hold a flashlight for him. A specialist in fingerprints testified that fingerprints on the flashlight were not made by Nancy.

Immediately after defendant was arrested he was taken to the police station. The police told him he was arrested for rape and molesting a 10-year-old girl. Defendant asked what the charge of rape consisted of, and Penal Code, section 286, was read to him. He then asked, "What is the crime of *fondling* children." (Italics added.) An officer then read Penal Code, section 288, to him. In questioning defendant the police had not used the word "fondling." After defendant had been taken to the station the police had a showup with him and five other men. Nancy was brought in and asked if she could point out the man who had molested her. She pointed to defendant.

Defendant told the police he had never seen Nancy; that he had been drinking at various bars that evening; that he was with a woman whom he took to work at about 6 p. m.; that she worked in a night club and that he stayed there until about 8 p. m. He told the police that Nancy had never been in his car; that he had not seen her before in his life. At the trial he admitted that Nancy was in the car; testified that he gave her 20 cents for holding the flashlight while he worked on his car, and offered to drive her home; that he drove around with her in the car because she could not show him where she lived, and that he let her out near her home. He denied the acts charged.

Counsel for defendant make an able, forceful, and persuasive argument on the cold record. But the cold record cannot give the look or manner of the complaining witness. "It is the dead body of the evidence without its spirit." A witness may convince all who hear him that he is truthful and yet his testimony, when read, may convey a most unfavor-

able impression. We cannot say, as a matter of law, that Nancy's testimony is inherently improbable or incredible in its vital particulars with respect to the charge of which defendant was convicted.

Order affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.

A petition was a rehearing was denied July 8, 1952, and appellant's petition for a hearing by the Supreme Court was denied July 24, 1952.