[Crim. No. 1006.   Fourth Dist.   Nov. 16, 1954.]

## THE PEOPLE, Respondent, v. DOMINGO ROMERO SUNIGA, Appellant.

Rosalind G. Bates and Roland S. Bates for Appellant.

Edmund G. Brown, Attorney General, and James D. Loebl, Deputy Attorney General, for Respondent.

BARNARD, P. J.—The defendant was charged with the crime of kidnapping, in violation of section 209 of the Penal Code; in a second count with the crime of rape; and in a third count with the crime of robbery. He was also charged with a prior conviction. His motion for a change of venue was denied, and he pleaded not guilty as to each count of the information and admitted the prior conviction. A jury found him guilty of kidnapping for the purpose of robbery as charged in the first count, recommending imprisonment for life without possibility of parole, and found him guilty on the second count. Judgment was entered accordingly, with the provision that the sentence on Count II should run concurrently with that on Count I. The defendant has appealed from the judgment and from the order denying his motion for a new trial.

Except as hereafter noted, no contention is made that the evidence is insufficient to support the verdict. On the evening of January 5, 1954, the victim parked her car on the A and P Lot in El Centro. She then took her two children, aged 16 months and about 3 years, and went across an alley to the rear door of a doctor's office. She then went to a nearby drugstore to have a prescription filled. Shortly before 6 p. m. she returned to her car for the purpose of going home. She opened the left front door, put the children over on the right side of the front seat, and got into the front seat behind the wheel. Before she could close the door the defendant appeared and held the door open. He ordered her to move over, and got into the car beside her. When she asked him what he wanted he replied "I want money." She was carrying a square purse with her wallet inside of it. The defendant took the purse from her, opened it, took out the wallet, looked hastily through it, and then put the wallet in his pocket and the purse on the floor between his feet. While this was taking place the defendant was holding a piece of glass at her throat, saying he would cut her throat if she did not do as he said. The defendant then drove the car out into the country and parked on a lonely road. He then raped the woman again threatening to kill her.

The defendant then drove a considerable distance over various country roads and finally stopped the car near a

ditch bank. He got out of the car, saying he had to urinate, and disappeared. He took the ignition keys with him and also took the victim's purse which had been resting between his feet. He returned five minutes later and drove on. When he arrived in the outskirts of El Centro he stopped the car and got out. Before leaving he opened the victim's wallet, took all the money from it, and then wiped both the wallet and purse and returned them to the victim. The victim testified that she only had 16 cents in the wallet, but the defendant later told officers that he did not remember where he took the money from the purse, did not know how much he took, did not remember whether it was as much as $2.00 and that he just took this money and put it with other money in his pocket. The victim then drove home, and her husband immediately reported the matter to the police department.

The defendant had been released on parole from the Chino prison on the morning of January 4. He was arrested at Blythe about a week later and on the way back to El Centro he admitted practically all the material facts of the case, his story to the officers being essentially the same as the story told by the prosecuting witness, with one exception not material here. He had wiped the doors and handle of the car but apparently had forgotten to wipe his fingerpritns from the rearvision mirror of the car.

The appellant first contends that the court erred in denying his motion for a change of venue. It is argued that certain newspaper articles, introduced as exhibits and now before us, made it impossible to have a fair trial in that county; and also disclosed that in another case where three youths attacked a Mexican woman a much less punishment was imposed. It is argued that a fair jury could not be secured in this county because these newspaper articles would inflame the minds of the people; that it appears from these newspaper articles that the average reader was conditioned to expect a greater penalty where the victim was of Anglo Saxon heritage than on the same crime where the victim was of Mexican ancestry; and that such a community could not produce unbiased jurors. The facts in the two cases referred to in the newspaper articles were different, and those articles do not support the contentions here made. These articles were strictly factual in nature, and extremely mild as such things go these days. They were all published more than three weeks before the trial, most of them five or six weeks, and there is no evidence in the record indicating that they

produced the effect which it is here contended that they did. There is no claim that any threats were made, or that any open acts of hostility occurred. Counteraffidavits were filed and we find nothing in the record to indicate that the court abused its discretion in denying this motion. (*People* v. *McCracken,* 39 Cal.2d 336 [246 P.2d 913].) It is further argued in this connection that the judge himself excused five prospective jurors who were honest enough to say they could not give the defendant a fair trial, and that this indicates that a fair jury could not be secured in that county. There is nothing in the record to indicate prejudice on the part of any other prospective juror, and it does not even appear that the defendant used all of his peremptory challenges.

Appellant's next contention is that the robbery committed by the defendant in taking a few cents from this woman "took place and was complete before the victim was kidnapped"; that the evidence is not sufficient to show any intent on the part of the defendant to hold or detain this woman for the purpose of robbery; and that the evidence conclusively shows that the admitted kidnapping was done only for the purpose of rape.

The evidence rather clearly indicates that the defendant's original intent was to commit robbery and, with the reasonable inferences therefrom, sufficiently supports the conclusion that this intention was not abandoned before the defendant drove away from the parking lot where the victim's car had been parked. The defendant admitted that he had had intercourse with another woman at a so-called "hotel" less than two hours before he appeared at this victim's car, which would tend to indicate that his original purpose was something other than rape. When he entered the victim's car he said he wanted money, and took the victim's purse. While he went through the wallet quickly, there is nothing to indicate that he then realized how little money there was in it, and he would naturally prefer to make a more careful inspection at some other place and not at this public spot where other people were apt to appear at any moment. He placed the wallet in his pocket admittedly without knowing how much money was in it, placed the purse on the floor between his feet, and drove away. Before returning to town he stopped the car and went away for five minutes, taking the purse with him. The only reasonable explanation of this would be that he wanted to examine it at his leisure, or that he wanted

to make sure that the woman did not take anything out of it during his absence. When they returned to the outskirts of town he went through the wallet more carefully and took all the money there was in it. The evidence, with the reasonable inferences therefrom, is sufficient to support the verdict on the first count. (*People* v. *Brown,* 29 Cal.2d 555 [176 P.2d 929]; *People* v. *Hernandez,* 100 Cal.App.2d 128 [223 P.2d 71].)

It is next contended that the court erred in denying the defendant the right to introduce evidence of "his family origin." The prosecuting witness had said she thought he was either a Mexican or a Filipino. The defendant was born in Arizona, went through the seventh grade in schools in Brawley, and spoke good English. The defendant's counsel sought to bring out that his father was of Aztec ancestry and the court ruled that this was immaterial. Many persons of Mexican descent have some Aztec blood in their ancestry, but no possible prejudice here appears. There was no question here on the matter of identification, and whether or not the defendant was in part Aztec or more Aztec than Mexican could not have affected the result.

The only other point raised is that the probation officer's presentencing report prejudiced the court. There is nothing in the record to sustain this contention. The only matter in which the judge had any discretion in pronouncing judgment was as to whether one part of the sentence should be made to run concurrently or consecutively, and that matter was decided in favor of the defendant.

The judgment and order appealed from are affirmed.

Griffin, J., and Mussell, J., concurred.