[Crim. No. 4152. First Dist., Div. One. Nov. 13, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. WILLIS ABNER, Defendant and Appellant.

Albert E. Polonsky for Defendant and Appellant.

Stanley Mosk, Attorney General, John M. McInerny and Eric Collins, Deputy Attorneys General, for Plaintiff and Respondent.

BRAY, P. J.—Defendant appeals from judgment, after trial without a jury, convicting him of 11 crimes.[1]

## QUESTIONS PRESENTED

1. Did the fingerprint expert's inability to enumerate 12 points of similarity between defendant's admitted fingerprints and those found at the scenes of the crimes deny defendant the right of fair cross-examination?

2. Sufficiency of the identification of defendant and alleged improbability of testimony of a witness.

## RECORD

It is defendant's contention that the fingerprint expert's testimony must be disregarded and that without it the evidence connecting defendant with the crimes is either nonexistent, too weak or inherently incredible.

Following is the evidence as to each particular count:

Count 1—Violation of section 261, Penal Code (rape).

Count 2—Violation of section 459, Penal Code (burglary).

Count 3—Violation of section 211, Penal Code (robbery).

On April 14, 1961, at about 9:25 p. m., Miss Katherine Bald who then lived at 345B Chestnut Street, San Francisco, was leaped upon in her darkened apartment by a person whom she thought was a Negro male. During the course of the ensuing struggle, he tried to stuff a cloth in her mouth, bit her finger and ear. He also menaced her with a pistol, the forward part of the barrel and the front sight of which she

---

[1]Defendant was charged with committing 13 crimes. Count 12 of the indictment charging defendant with violation of section 459, Penal Code (burglary) was dismissed by the prosecutor. Defendant was acquitted of count 13, violation of section 664, Penal Code (attempt to commit burglary).

saw. A Mauser pistol belonging to defendant was shown to Miss Bald at the trial and she said it resembled the one she had been menaced with.

The attacker then threw her onto a couch and committed an act of rape. He also took $180 which was in the apartment, using force.

Sergeant McInerney of the San Francisco Police Department lifted a latent palm print from the window sill of the apartment. Later, Assistant Inspector Ihle, a fingerprint expert, identified the print as that of the defendant.

Count 4—Violation of section 220, Penal Code (assault with intent to commit rape).

Count 5—Violation of section 459, Penal Code (burglary).

Count 6—Violation of section 211, Penal Code (robbery).

On May 2, 1961, Miss Georgia Gillis who then lived in an apartment at 1129 Hyde Street, San Francisco, entered her bedroom at about 11 p. m. A man in her bedroom pulled her to the floor, choked her, and forced her to remove her pajama bottoms; he also attempted to stuff a handkerchief into her mouth which she spat out. He pulled her to her feet, took her into the kitchen, and forced her to give him $7 or $8 from her wallet. He again forced her to the floor and unzipped his trousers, and said something indicating he was going to perform an act of sexual intercourse. Miss Gillis then screamed and the attacker ran away. At the trial she identified the defendant, saying, "I think that he's over there. . . . The one in the green jacket." Her only direct recollection of the man as he was in the apartment was that he wore a T-shirt.

Inspector Ihle, the fingerprint expert, developed a latent print on the inside of a rear door of the apartment which he later identified as that of the defendant.

Count 7—Violation of section 459, Penal Code (burglary).

On May 15, 1961, Miss Ann Zweck, 1219 Taylor Street, San Francisco, left her apartment at about 7:30 p. m. and returned about 10:30 p. m. The night lock had been put on and $250 was missing. She had no knowledge of any other facts concerning the burglary.

Sergeant McInerney lifted a latent palm print from the window sill of the apartment which Inspector Ihle later identified as that of the defendant.

Count 8—Violation of section 288a, Penal Code (oral copulation).

Count 9—Violation of section 459, Penal Code (burglary).

Count 10—Violation of section 211, Penal Code (robbery).

On May 24, 1961, Miss Marion Cook, then living at 10 Edgardo Place, San Francisco, let herself into her apartment at about 10:15 p. m. There was a man in her bedroom. He went behind her, put his hand over her mouth and said, "Don't scream. I won't hurt you. All I want is your money." They struggled and he forced her to give him $15 she was carrying in her purse. Taking her gloves from her purse, he gagged her and bound her hands behind her back with a bathrobe tie. Having her on the floor, he took off her undergarments and performed several acts of oral copulation. She identified, without equivocation, the defendant as her assailant.

Officer Tresmontan of the San Francisco Police Department lifted latent prints from a wastebasket, which Miss Cook had seen the defendant handle, and several wine bottles in the apartment. Some of the prints were smudged but others were identified by Inspector Ihle as those of the defendant.

Count 11—Violation of section 459, Penal Code (burglary).

Mr. John Jardin, resident of 384 Chestnut Street, San Francisco, went to bed on May 27, 1961, at about 10 p. m. He had left his wallet containing $145 in the breast pocket of his shirt by his bed. When he woke up the next morning at about 8:30 a. m., the wallet was in his coat pocket and the money was gone.

Officer Wigington of the San Francisco Police Department lifted latent fingerprints from the lower left inside of the window sill. The prints were later identified by Inspector Ihle as those of the defendant.

On June 21, 1961, Officer Bastiani of the San Francisco Police Department stopped defendant at 525 Broadway, San Francisco, as he corresponded with the general description of the wanted assailant. The defendant came willingly and permitted his fingerprints to be taken. Defendant said he had been staying with a friend and gave Bastiani permission to recover his clothing and property. Included in this property was a gun.

Inspector Duveneck of the San Francisco Police Department took the defendant to all of the addresses involved and the defendant denied ever having been at any of them.

Defendant did not testify.

1. *Was Defendant's Cross-examination of the Fingerprint Expert Unduly Restricted?*

On direct examination, Inspector Ihle was first asked his qualifications, which were training in the police department and the making of over 300,000 comparisons in a period of

approximately 11 years. The inspector stated that he had testified numerous times in the local, state and federal courts. Then the witness explained the basis for fingerprint comparisons and pointed out that in his opinion 12 points of similarity were adequate to show a positive identification.

The witness was then asked his opinion as to whose fingerprints were lifted from the various locations in issue. He stated that the prints were those of the defendant, basing his opinion on a finding of at least 12 points of similarity between those prints and the master prints.

On cross-examination the witness was asked to state the points of similarity he found. He answered that he could not do so because he had not made any notes at the time he had examined the prints. This procedure was repeated four or five times. He stated that in examining fingerprints he ''never made notes pointing out the exact points. As I go through and examine each point as it appears, or each characteristic as it appears, I am more interested in the ridge counts between them, and I examine the entire print in such a manner so that it is thoroughly gone through, but I don't actually put down 'Point No. 1,' 'Point No. 2,' 'Point No. 3,' or any notes such as that.'' The witness also stated that no enlargements of the photographs of the prints had been made. It should be noted that defense counsel neither asked for a continuance to press his cross-examination with the use of enlargements, nor did he move that the expert's evidence be stricken.

On this appeal, with respect to counts 1, 2, 3, 7, and 11 of the indictment, defendant contends that because the expert was unable to remember the points of similarity under the Henry System of fingerprint comparison, his cross-examination was unduly restricted and left the decision of guilt or innocence in the hands of the expert. Therefore, defendant contends, the expert's evidence should be disregarded, and, in such event, there is not sufficient other evidence to support a conviction because the complaining witness in counts 1, 2 and 3 could not identify the defendant as her assailant.

■ The right of cross-examination is fundamental; it is not a matter of privilege but of absolute right. (*People* v. *Flores* (1936) 15 Cal.App.2d 385, 401 [59 P.2d 517].) Its denial or undue restriction may be reversible error. (*People* v. *Redwine* (1958) 166 Cal.App.2d 371 [333 P.2d 188].) ■ And where a party cannot cross-examine a witness because of the witness' *refusal* to answer the trial court may strike out the direct examination. (*People* v. *McGowan* (1926)

80 Cal.App. 293 [251 P. 643]; and see Witkin, Cal. Evidence, § 624, p. 672.) The trial judge has some discretion in determining how much of the direct testimony should be stricken. (*People* v. *Robinson* (1961) 196 Cal.App.2d 384, 391 [16 Cal. Rptr. 484].)

It is to be noted that the above cases deal with a *refusal* to answer, which is not the case here. Defendant makes no attempt to rely on them. Rather, the main thrust of his argument seems to be on the question of what weight should be given the expert's testimony in view of his inability to testify as to the 12 points of similarity. Defendant urges that the approach taken in *Priestly* v. *Superior Court* (1958) 50 Cal.2d 812 [330 P.2d 39], is applicable here. In that case the court held that the identity of an informer, whose communications were relied on to establish probable cause, must be disclosed; otherwise, the testifying officer would become the sole judge of what is probable cause to make a search. By analogy, defendant argues that the expert's testimony here fails to disclose the basis of his opinion and is not entitled to any weight because of the lack of enumeration of the points of similarity. *Priestly,* however, is not analogous since it involved a refusal to disclose the informer's identity, and further it does not really involve a question as to the weight to be given an *officer's* testimony, but the weight to be given the *information* obtained from an unknown informer. (50 Cal.2d at p. 818.) The expert's testimony here related to information he had obtained firsthand upon an examination of the fingerprints, and not upon a furtive disclosure by an unknown, and possibly unreliable, informer. It should also be noted that in *Priestly* the court said that the officer's testimony would be stricken only on proper motion (50 Cal.2d at p. 819). Even if the rule is applicable, defendant here made no such motion.

The degree of weight and credibility to be attached to evidence is a matter for the trier of fact. (Code Civ. Proc., § 1847; *People* v. *Huston* (1943) 21 Cal.2d 690, 693 [134 P.2d 758]; *People* v. *Gunn* (1959) 170 Cal.App.2d 234, 239 [338 P.2d 592].) The effect of expert opinion evidence in criminal cases is provided for by statute. (Pen. Code, § 1127b.)

Under the proper circumstances fingerprints are alone sufficient to identify a defendant as the criminal since they are the strongest evidence of identity. (*People* v. *Riser* (1956) 47 Cal.2d 566, 589 [305 P.2d 1]; *People* v. *Beem* (1961) 192 Cal.App.2d 207, 211 [13 Cal.Rptr. 238].) A reviewing court may not reject testimony of a witness who has been

believed by the trier of fact unless it is a physical impossibility that it be true, or its falsity is apparent without resorting to inferences or deductions. (*People* v. *Huston, supra,* 21 Cal.2d 690, 693 [134 P.2d 758] ; *People* v. *Whitehurst* (1952) 112 Cal. App.2d 140, 144 [245 P.2d 509].) ▆▆ No such impossibility or falsity exists here, nor can it be reasonably said that the right of cross-examination was restricted (by the police department, as defendant insists), nor did the trial partake of a "Star Chamber" proceeding. ▆▆ The officer's inability to remember the 12 points of similarity did not make his testimony of positive identification inadmissible. Such fact merely related to the weight to be given his testimony by the trial judge.

▆▆ An examination of the record shows that defendant cross-examined the expert at length, made no objection to the fact that the expert said that he could not remember the 12 points of similarity, did not ask that the witness be required to study the fingerprints again and return for further cross-examination, made no request for a continuance to meet the situation, and did not move to strike the witness' testimony.

2. *Sufficiency of the Identity Testimony.*

▆▆ With respect to counts 4, 5, and 6, defendant suggests that the identity testimony given by Miss Gillis is weak and without the fingerprint expert's testimony is insufficient to support the conviction. However, if any weakness existed in her identification of defendant, the expert's identification of defendant's fingerprints found at her apartment fully supports the court's finding.

The witness said, "I think that he's over there. . . . Sitting over there. . . . The one in the green jacket . . . I had a very quick glance at him, but he was very similar." ▆▆ "If the testimony of the identifying witnesses is worthy of credence and convinces the jury, the latter's finding is final unless the trial judge should with his intimate knowledge of the witness' behavior upset the verdict. [Citations.] ▆▆ It is not essential that the witness be free from doubt as to one's identity. He may testify that in his belief, opinion or judgment the accused is the person who perpetrated the crime. The want of positiveness [if that existed here] goes only to the weight of the testimony." (*People* v. *Cahan* (1956) 141 Cal.App.2d 891, 897 [297 P.2d 715], quoting from *People* v. *Harris* (1948) 87 Cal.App.2d 818, 823 [198 P.2d 60] ; see also

Witkin, Cal. Evidence, § 171, p. 192.) This completely answers defendant's contention.

With respect to counts 8, 9, and 10, defendant asserts that Miss Cook's testimony of the event is "inherently impossible." The witness made a positive identification of the defendant. Her story, as set forth above, does not seem incredible or impossible. As to all the counts, it must be remembered that defendant did not testify.

The judgment is affirmed.

Sullivan, J., and Molinari, J., concurred.