ROTH, P. J.
 

 Appellants James Lee Paxton and Raymond Sparks and defendant Jimmy Wendle Theus were jointly charged and tried on four counts: kidnaping with intent to commit robbery (violation of Pen. Code, § 209) (count I); rape (violation of Pen. Code, § 261, subd. 3) (count II); oral copulation (violation of Pen. Code, § 288a) (count III) ; and robbery (violation of Pen. Code, § 211) (count TV), all felonies.
 

 Paxton, Sparks and Theus severally represented by different counsel, each pleaded not guilty. A jury found appellant Sparks guilty as charged on each of the four counts and appellant Paxton guilty of kidnaping (violation of Pen. Code, § 207), a lesser but necessarily included offense to the charge of kidnaping with intent to commit robbery, as to count I, and guilty as charged as to counts II, III, and IV. The jury was unable to agree regarding Theus.
 

 Sparks was sentenced to life imprisonment without possibility of parole on count I and to the terms prescribed by law on counts II, III and IV, sentences to run concurrently. Paxton was sentenced on the lesser included offense in count I (kidnap) and on count II (rape) to run consecutively. As to Paxton, the sentences on counts III and IV were ordered to run concurrently with counts I and II.
 

 At 3 :30 a.m. on February 24, 1965, Mrs. Rita Eichor left her place of employment and drove to her home in Inglewood. A few blocks before she reached her residence she noticed a light colored Buiek following her with headlights on. She parked her automobile in her driveway, walked toward her house and again noticed the Buiek in the street from which she had just turned. Its headlights were now out.
 

 Before she entered her house, she remembered that she had left her purse in the car. She returned to retrieve it.
 

 When she approached her car, she saw a man standing beside it. She testified it was dark and she could not discern the man’s features. The man told her that she had struck a child a few blocks back. She twice ordered the man to leave and
 
 ‘ ‘
 
 lost consciousness. ’ ’
 

 
 *63
 
 She next remembered being in the back seat of her automobile with appellant Paxton. Appellant Sparks was driving with defendant Theus in the front seat beside him. She vaguely heard someone in the ear saying that they were Black Muslims and that they wanted her money and sex. Her jaw was causing her great pain.
 

 Despite her protests and statement that she had a husband and a three-year-old son, and her pleas to be released, Paxton ripped Mrs. Eiehor’s skirt off and raped her. After the rape, Sparks, stopped the car. Paxton and Theus exchanged seats. Sparks, turning half-way from the driver’s seat, ripped off her blouse and brassiere. Theus forced an act of oral copulation. Sparks then again half turned, demanded that Mrs. Eiehor give them her rings, watch and pendant. Throughout the ride she was forced to keep her head down and when she replied that she could not remove the pendant because of her crouched position, Sparks told her not to break it and hit her in the jaw with his fist. She removed the items and gave them to Theus. When Sparks asked her how much more money she had at home, the victim replied that she had about a hundred dollars. Sparks told her that she "better be right” or her 11 husband and baby would get hurt. ’ ’
 

 Sparks drove the Eiehor car into an alley. Theus left the car to get the automobile which they had been driving. Mrs. Eiehor was then ordered to leave the car. She asked for her coat. Sparks responded that "white trash didn’t need their clothes on.” The victim, completely naked, left the automobile and Sparks and Paxton drove away in her car. She went to a house with a "light on” and shortly thereafter the police arrived.
 

 Immediate subsequent hospital treatment showed, among other things, that the victim had a double fracture of the lower jaw.
 

 Paxton was arrested by the police at 6:20 a.m. on February 24. He was advised that he had the right to remain silent at all times, to have an attorney present if he wished to make any statement, and that anything he did say could be used against him. Paxton replied he knew his rights. Two other officers subsequently advised Paxton of these same rights and he also told them that he was aware of his rights. The three officers were presented with conflicting stories.
 

 On February 25, Sparks was arrested and his car, suspected of being the one used to follow Mrs. Eiehor, was impounded and searched. On March 11, 1965, Mrs. Eiehor went to the
 
 *64
 
 Inglewood Police Station. She was asked if she could .identify Sparks’ vehicle. She- said it resembled the vehicle which followed her prior to the crime. A St. Christopher medal was hanging by a chain from the rear view mirror of the automobile. Mrs. Bichor recognized it as one which she purchased several years earlier and which she had in her wallet on the morning of the crimes. Officer Blair removed the medal from the car.
 

 • Helen Idziorek testified for the prosecution that shortly after 1 a.m. on December 30, 1964, she parked her car in a lot near her apartment. As she left the lot Paxton jumped from some bushes with a knife in his hand and said, “Don’t scream, Missy, or I’ll kill you.” He grabbed both her car keys and her purse and led her back to her automobile. Sparks then approached and inspected the contents of her purse.
 

 Miss Idziorek was pushed into the back seat of her vehicle. ■Sparks looked through the glove compartment for money. While Paxton drove, Sparks attempted to have intercourse with her. When Sparks told Paxton he was unable to penetrate, Paxton then stopped the vehicle and they changed positions. Paxton attempted to have intercourse with the victim. He too, was unsuccessful. They once again changed positions. Sparks tried again and consummated the rape. Throughout the harrowing ride, the victim was forced to keep her head down. After the completed act of intercourse, Sparks and Paxton fled the automobile and left the victim alone.
 

 On cross-examination, Miss Idziorek testified that she could not positively identify Sparks as one of the men. No evidence was presented that either Sparks or Paxton were tried or convicted of this previously alleged crime.
 

 Contending that the seizure of the medal from the impounded Sparks automobile was too remote from the time and place of Sparks’ arrest, both appellants claim that the police should have obtained a search warrant before removing the medal and that in the absence of such warrant, the medal was illegally taken from Sparks ’ vehicle.
 

 The removal of the medal in plain sight and after it had been identified by Mrs. Bichor does not constitute the type of search that is forbidden by the United States and California Constitutions. As the court pointed out in
 
 People
 
 v.
 
 West,
 
 144 Cal.App.2d 214; 219-220 [300 P.2d 729]: . the term • [search]: implies-some exploratory investigation'or' an invasion and quest,'a looking for-or seeking out. The quest may be secret, intrusive or accomplished by force, and it has
 
 *65
 
 been- held that a search implies some sort of force, either actual or constructive, much or little. A search implies a prying into hidden places for that which is . . . hidden or intentionally put out of the way. While it has been said that ordinarily searching is a function of sight, it is generally held that the mere looking at that which is open to view is not a ‘search.’ ” (See also
 
 Bielicki
 
 v.
 
 Superior Court,
 
 57 Cal.2d 602, 605 [21 Cal.Rptr. 552, 371 P.2d 288], and
 
 People
 
 v.
 
 Holloway,
 
 230 Cal.App.2d 834, 839 [41 Cal.Rptr. 325].)
 

 The police officer and Mrs. Eichor saw the medal hanging in plain sight from outside the automobile, neither hidden nor concealed from the gaze of the inquiring public. Where one leaves an item in plain view of the outside observer he is deemed to have impliedly consented to its being seen. Constitutional safeguards are not applied in such a situation.
 

 Assuming, however, that peering into Sparks’ car was a search, recent eases clearly dispose of appellants’ contention that the search and seizure were not valid even though they were not incident to the arrest.
 

 Questions regarding the reasonableness of searches under the Fourth Amendment of the United States Constitution are controlled by federal law in state as well as federal courts.
 
 (Mapp
 
 v.
 
 Ohio
 
 (1961) 367 U.S. 643 [6 L.Ed.2d 1081, 81 S.Ct. 1684, 84 A.L.R.2d 933]). Appellants’ arguments have been settled by the recent ease of
 
 Cooper
 
 v.
 
 California
 
 (1967) 386 U.S. 58 [17 L.Ed.2d 730, 87 S.Ct. 788.] In
 
 Cooper,
 
 defendant was arrested for violation of a narcotics offense and his automobile, believed to have been used to transport the contraband, was seized, pursuant to a California statute. A search was made of the car a week later and revealed a small piece of brown paper sack. The paper was introduced into evidence and the suspect was convicted. The court held that the search was lawful since the reason for and nature of the custody constitutionally justified the search. It distinguished its decision in
 
 Preston
 
 v.
 
 United States
 
 (1964) 376 U.S. 364 [11 L.Ed.2d 777, 84 S.Ct. 881] on the basis of the remoteness in
 
 Preston
 
 between the arrest and the fruits of the subsequent search. In
 
 Preston, supra,
 
 the defendant was arrested for a vagrancy violation. A subsequent warrantless search of his impounded automobile revealed assorted burglary paraphernalia. The court in
 
 Cooper
 
 says at page 61 [17 L.Ed.2d at p. 733] : “The fact that the police had custody of Preston’s car was totally unrelated to the vagrancy charge for which they arrested him. So was their subsequent search of the car. ’ ’
 

 
 *66
 
 The present case falls clearly within the guidelines drawn in
 
 Cooper, supra.
 
 Sparks’ car was impounded because it was believed to have been the one used to follow Mrs. Eiehor. It is reasonable to infer that the police believed that the vehicle contained evidence of
 
 that
 
 crime and thus impounded it for that reason. Therefore, the subsequent search and seizure of the St. Christopher medal was closely related to the reason that the appellants were arrested. It is irrelevant to say that the police could have obtained a search warrant, for the test is “not whether it is reasonable to procure a search warrant, but whether the search was reasonable.”
 
 (United States
 
 v.
 
 Rabinowitz
 
 (1950) 339 U.S. 56, 66 [94 L.Ed. 653, 660, 70 S.Ct. 430, 435]).
 

 Assuming
 
 arguendo
 
 that Officer Blair’s act was a search, it was clearly not one proscribed by any constitutional standard. Since federal law controls
 
 (Mapp
 
 v.
 
 Ohio, supra),
 
 the significance of
 
 People
 
 v.
 
 Burke,
 
 61 Cal.2d 575, 581 [39 Cal.Rptr. 531, 394 P.2d 67], which is heavily relied on by appellants, is substantially diminished by the
 
 Cooper
 
 case.
 

 Appellants contend further that the testimony of Helen Idziorek was improperly admitted. The point is without merit. Evidence of other crimes is inadmissible when offered solely to prove criminal disposition or propensity to commit the crime charged, because the probative value of such evidence is outweighed by its prejudicial effect.
 
 (People
 
 v.
 
 Kelley,
 
 66 Cal.2d 232, 238 [57 Cal.Rptr. 363, 424 P.2d 947];
 
 People
 
 v.
 
 Peete,
 
 28 Cal.2d 306, 314-315 [169 P.2d 924].) However, it is well established that evidence of other offenses may be admitted when such offenses are substantially similar to the crime charged on the theory that such evidence discloses a general pattern of criminal behavior. The primary purpose of such evidence is to identify the defendant as the perpetrator of the crime charged. (Witkin, Cal. Evidence (2d ed. 1966) 306-307;
 
 People
 
 v.
 
 Peete, supra,
 
 at p. 315.) The general test of admissibility of evidence is whether it tends, logically, naturally and by reasonable inference, to establish any fact material for the People or to overcome any material matter sought to be proved by the defense.
 
 (People
 
 v.
 
 Peete, supra,
 
 at pp. 314-315.) The evidence should be received with “extreme caution” and if its connection with the crime charged is not clearly perceived, the doubt should be resolved in favor of the accused.
 
 (People
 
 v.
 
 Kelley, supra,
 
 at p. 239;
 
 People
 
 v.
 
 Albertson,
 
 23 Cal.2d 550, 557 [145 P.2d 7].)
 

 
 *67
 
 A common plan refers to “a unique methodology or peculiar behavior pattern which tends to identify . . . .”
 
 (People
 
 v.
 
 Baskett,
 
 237 Cal.App.2d 712, 717 [47 Cal.Rptr. 274].) It is not necessary, however, to prove that the crime is identical in every detail.
 
 (People
 
 v.
 
 Fowler,
 
 119 Cal.App.2d 657, 662 [260 P.2d 89];
 
 People
 
 v.
 
 MacEwing,
 
 216 Cal.App.2d 33, 49 [30 Cal.Rptr. 476];
 
 People
 
 v.
 
 Lindsay,
 
 227 Cal.App.2d 482, 505 [38 Cal.Rptr. 755].)
 

 'Turning' to the present case, we find that the facts surrounding the commission of the uncharged offense were substantially similar to the offenses charged. In each case, the victim was approached at night near her home as she was leaving her automobile and in each, by force and violence, was taken back into her vehicle where violent sexual acts were committed upon her by two men. In each instance, the acts were committed in the victim’s automobile and the victim’s head was kept down so that she could not look outside the vehicle. In each instance, appellants, particularly Sparks, sought the victim’s money or other valuables. The almost identical behavior of Sparks and Paxton in respect of the Idziorek incident with that of the Eiehor crimes, satisfies us that the trial court did not abuse its discretion in the ease at bench.
 

 Appellant Paxton claims reversible error in the admission into evidence of his various statements to the police. He urges he was not advised of his rights to an appointed attorney as required by
 
 Miranda
 
 v
 
 Arizona,
 
 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974. Appellants’ trial began before June 13, 1966, the date of the
 
 Miranda
 
 decision. Our Supreme Court has specifically stated that the
 
 Miranda
 
 requirements will not be made retroactive
 
 (People
 
 v.
 
 Rollins,
 
 65 Cal.2d 681 [56 Cal.Rptr. 293, 423 P.2d 221].) The rules announced in
 
 Escobedo
 
 v.
 
 Illinois
 
 (1964) 378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758] and
 
 People
 
 v.
 
 Dorado,
 
 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361], were fulfilled. We find no merit in this claim.
 

 Appellant Sparks argues that his conviction under Penal Code, section 209 (count I) should be modified because there was no showing that his intent in respect of that charge was any different than that of Paxton who was convicted of the lesser included offense, to wit: kidnaping, violation of Penal Code, section 207. He asks modification under Penal Code, section 1381, subdivision 6. We cannot weigh evidence. We can modify a verdict only when the evidence is legally insuffi
 
 *68
 
 cient to show the crime or degree.
 
 (People
 
 v.
 
 Thomas,
 
 25 Cal. 2d 880, 904 [156 P.2d 7];
 
 People
 
 v.
 
 Sheran,
 
 49 Cal.2d 101, 108-109 [315 P.2d 5].)
 

 For purposes of section 209, a conviction thereunder for kidnaping with intent to commit robbery is sufficient if the kidnaper commits robbery during the course of the abduction. (
 
 In re Ward,
 
 64 Cal.2d 672, 676 [51 Cal.Rptr. 272, 414 P.2d 400];
 
 People
 
 v.
 
 Brown,
 
 29 Cal.2d 555, 558 [176 P.2d 929].) It is immaterial whether or not an intent to rob existed at the beginning of the act.
 
 (People
 
 v.
 
 Hernandez,
 
 100 Cal.App.2d 128, 133 [223 P.2d 71].)
 

 There is ample evidence to show that Sparks actually robbed the victim. He told her to remove her jewelry and struck a blow to her already injured jaw when she indicated that she was having difficulty in removing her pendant. Clearly, there was sufficient evidence for the jury to convict him under section 209.
 

 Sparks cannot complain of the fact that he was more severely treated than his codefendant since it has been held that “the conviction of a co-defendant for a lesser crime than that of which an appealing defendant was found guilty is no basis for setting aside the appellant’s conviction.”
 
 (People
 
 v.
 
 Smith,
 
 117 Cal.App. 530, 533 [4 P.2d 268]; see also
 
 People
 
 v.
 
 Black,
 
 80 Cal.App. 605, 607 [251 P. 343].)
 

 Finally, appellants urge that the trial court’s imposition of concurrent sentences on all four counts as to Sparks and consecutive and concurrent sentences as to Paxton, constitutes double punishment within the meaning of Penal Code, section 654.
 
 (Neal
 
 v.
 
 State of California,
 
 55 Cal.2d 11, 18-19 [9 Cal.Rptr. 607, 375 P.2d 839] ;
 
 People
 
 v.
 
 McFarland,
 
 58 Cal.2d 748, 760-763 [26 Cal.Rptr. 473, 376 P.2d 449];
 
 People
 
 v.
 
 Ridley,
 
 63 Cal.2d 671, 677, 678 [47 Cal.Rptr. 796, 408 P.2d 124] ;
 
 In re Ward, supra,
 
 pp. 675-677;
 
 People
 
 v.
 
 Hicks,
 
 63 Cal.2d 764 [48 Cal.Rptr. 139, 408 P.2d 747].)
 

 Whether a course of criminal conduct is divisible and consequently gives rise to more than one act within the meaning of section 654 is determined by the intent to one objective of the actor. “If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one. ”
 
 (Neal
 
 v.
 
 State of California, supra,
 
 p. 19.)
 

 The two sex crimes here charged are divisible and were not incident to a common objective. The purpose of the rape was not to aid and abet in the later act of oral copulation
 
 *69
 
 completed by a different individual. Appellants could therefore be punished separately for these two crimes.
 

 As to Sparks, the conviction for kidnaping with intent to commit robbery and for robbery are double punishment within the meaning of the statute.
 
 (In re Ward, supra,
 
 at p. 676.) The jury found that he kidnaped the victim, intending to commit robbery; therefore, the two offenses are not severable.
 

 In
 
 McFarland, supra,
 
 at page 763, the court held that: “The appropriate procedure [on appeal] ... is to eliminate the effect of the judgment as to the lesser offense insofar as the penalty alone is concerned.” Second degree robbery imposes a lesser sentence than kidnaping with intent to commit robbery. (Compare Penal Code, section 213 with Penal Code, section 209.) As to Sparks, therefore, the judgment of conviction on count IY, violation of Penal Code, section 211, should be eliminated.
 

 As to Paxton, it is not clear whether the offense of kidnaping (§ 207) was incident to either rape, oral copulation or robbery. Paxton’s conviction of a lesser offense, to wit: kidnap (Pen. Code, § 207) included in the offense of kidnap to commit robbery (Pen. Code, § 209) with which he was charged is not a conclusive indication that he did not subsequently form the intent to commit or to aid and abet in the commission of a robbery. The verdicts on these two counts are not necessarily inconsistent, or the jury insofar as Paxton is concerned, may have been merciful in its deliberation.
 
 (People
 
 v.
 
 Amick,
 
 20 Cal. 2d 247, 252 [125 P.2d 25].)
 

 In pronouncing judgment on Paxton, the court ordered the sentences on counts I and II to run consecutively and sentences on counts III and IY to run concurrently. Paxton personally perpetrated the rape. He aided and abetted in the commission of the other crimes charged. It would appear, therefore, that this is the only crime which Paxton had in his mind incident to and as part of the kidnaping. Since the punishment for the crimes of kidnaping and violation of Penal Code, section 261, subdivision 3 was consecutive, the only sentence which can be properly set aside without interfering with the trial court’s discretion, is that imposed for violation of section 288a. In comparing punishment for kidnaping with each of the other three offenses, it is clear that kidnaping carries the heaviest punishment and the least punishable offense is that of oral copulation. (Compare Pen. Code, §§ 208, 213 and 288a.) In
 
 In re Cruz,
 
 64 Cal.2d 178 [49
 
 *70
 
 Cal.Rptr. 289, 410 P.2d 825], the court holds at page 181: ‘1 As we have seen, the judgment directed that the sentences as to counts 1 and 2 run consecutively and that the sentences as to counts 3 through 5 run concurrently with count 2. It was discretionary with the trial court whether to make the sentences run consecutively or concurrently. (Pen. Code, § 669 ;
 
 People
 
 v.
 
 Graham,
 
 198 Cal. App.2d 617, 620 [18 Cal.Rptr. 134] ;
 
 People
 
 v.
 
 Tipton,
 
 124 Cal.App.2d 213, 217 [268 P.2d 196].) This court should not set aside the sentences as to count 1 because the effect of so doing would be to unnecessarily interfere with the trial court’s discretion in imposing consecutive sentences.
 

 ‘ ‘ Setting aside the sentence as to count 2 will not have that effect. It is clear that the intent of the trial court was to have the sentences imposed on counts 3 through 5 commence at the completion of the sentence on count 1. Setting aside the sentence as to count 2 cannot reasonably be viewed as preventing the carrying out of that intent. Several federal decisions have reached this same conclusion.
 
 (Dailey
 
 v.
 
 United States,
 
 259 F.2d 433, 434;
 
 Watson
 
 v.
 
 United States,
 
 174 F.2d 253, 254 [84 App.D.C.86].) Upon the setting aside of the sentence as to count 2 petitioner will no longer be subject to double punishment because there will then be an objective of the conspiracy (i.e. the grand theft charged in count 2) other than the grand thefts charged in the remaining counts. ’ ’
 

 As to appellant Sparks, the judgment is reversed insofar as sentence was imposed on the robbery conviction on count IV, and affirmed in all other respects.
 

 As to appellant Paxton, the judgment is reversed insofar as sentence was imposed on the oral copulation conviction on count III, and affirmed in all other respects.
 

 Herndon, J., and Fleming, J., concurred.
 

 The petition of appellant Sparks for a hearing by the Supreme Court was denied December 7, 1967.