[Crim. No. 4734. In Bank. Jan. 22, 1947.]

THE PEOPLE, Respondent, v. EDWARD WESLEY
BROWN, Appellant.

Darold D. DeCoe and C. K. Curtright for Appellant.

Robert · W. Kenny and Fred N. Howser, Attorneys General, and James O. Reavis, Deputy Attorney General, for Respondent.

TRAYNOR, J.—Defendant, Edward Wesley Brown, was convicted of robbery in two counts, of rape, and of kidnaping for the purpose of robbery. The jury found that the victim suffered bodily harm and fixed the punishment at death. This is an automatic appeal under section 1239(b) of the Penal Code.

The facts disclosed by the record are as follows: On March ·22, 1946, at about 9 p. m., Mrs. Cleda M. Jacobs returned to her automobile after visiting a doctor's office in the city of Sacramento. As soon as she was seated, a man, identified by her as defendant, entered the automobile and exhibited a gun, saying, ''Madam, this is a gun, it is loaded. Do as you are told and no harm will come to you.'' Defendant ordered Mrs. Jacobs to drive her car according to his directions and they went an undetermined distance to a point outside the congested area of the city. During the entire ride defendant gave the orders and kept his gun pointed at Mrs. Jacobs. Finally, he ordered her to drive the car to the side of the road and get out. She started to take her purse with her, but was ordered to leave it in the car. Defendant then got out and,. still pointing the gun at Mrs. Jacobs, directed her to go up a hill on a levee. When they reached some bushes defendant ordered Mrs. Jacobs to disrobe and lie down. De- ·fendant then had sexual intercourse with her and kept the gun in his hand during the entire act. Defendant dried himself with a handkerchief, threw it on the ground, and ordered Mrs. Jacobs to dress.

After Mrs. Jacobs had dressed, defendant asked her how much money was in her purse. She told him that the purse contained about a dollar and a half or a dollar and. seventy-five cents. Defendant asked her the question again, threateningly, and when she gave the same reply he struck her on the chin with his fist. Mrs. Jacobs fell to the ground and defendant removed her wrist watch from her arm and left the scene. Mrs. Jacobs remained on the ground for a few minutes in a dazed condition and heard a motor start. She returned to the road to find that her automobile and purse were gone. ·People

living in a tent nearby transported her to town where she made a report to the police. At that time she was distraught and her jaw was badly bruised.

Defendant, meanwhile, returned to town. He met an accomplice, not a party to this appeal, and together they used Mrs. Jacobs's automobile to follow an automobile driven by Mrs. Elsie F. Phelps. Mrs. Phelps noticed the pursuing car and drove to the side of the street, slowing down, to allow it to pass. Defendant passed Mrs. Phelps and drove diagonally in front of her car and stopped, thus compelling her to stop. Defendant walked over to Mrs. Phelps and told her that she had been driving too fast, and when she disagreed with him he opened her car door and told her to move over. Mrs. Phelps refused and defendant held a gun against her stomach, reached across her body and removed her purse, which was on the seat to her right. This purse contained a pencil, personal items, eight dollars, a billfold and a coin purse. Defendant returned to Mrs. Jacobs's automobile and drove away, but Mrs. Phelps meanwhile ascertained the license number.

Defendant returned to his place of residence at about 10 p. m. after parking Mrs. Jacobs's car about a block and a half away. Soon after, the police arrived and made inquiries of the owner concerning a person of his description. They did not search the place, and defendant remained in a back room out of sight. He went to Oakland or San Francisco at about midnight with friends. Two days later he sold his gun and Mrs. Jacobs's wrist watch to a woman in San Francisco and on March 25, 1946, he was arrested in that city. A search of his person resulted in the recovery of Mrs. Phelps's pencil. He was wearing a jacket described and recognized by both Mrs. Phelps and Mrs. Jacobs.

Defendant made a voluntary unsigned and unsworn statement in the presence of police officers and representatives of the district attorney's office. This statement was taken down by a stenographer and then transcribed. Defendant admitted therein substantially all the facts described above, but could not recall striking Mrs. Jacobs with his fist. He attributed his conduct to drinking and to smoking marihuana cigarettes, although he admitted that at the time of the commission of the charged offenses he knew that his conduct was wrongful.

Defendant was clearly identified as the person who sold the gun and wrist watch in San Francisco. Mrs. Jacobs identified him as her attacker by selecting him from a group of men.

Mrs. Phelps identified him by his walk and his features. Mrs. Jacobs's testimony was strengthened by the recovery of the handkerchief, which proved to contain spermatazoa upon laboratory examination. Doctors and witnesses testified to the bruise on her left jaw and a photograph taken on March 27, 1946, showed that her jaw was still discolored.

The controlling question on this appeal is whether the acts of defendant constituted kidnaping for the purpose of robbery as defined in section 209 of the Penal Code. ■ Section 209 is concerned with one of the most serious types of kidnaping, the spiriting away of individuals for the purpose of extortion, robbery or ransom, and authorizes the jury to impose the death penalty if the victim suffers bodily harm. Section 209 as amended in 1933 provides:

"Every person who seizes, confines, inveigles, entices, decoys, abducts, conceals, kidnaps or carries away any individual by any means whatsoever with intent to hold or detain, or who holds or detains, such individual for ransom, reward or to commit extortion or robbery or to exact from relatives or friends of such person any money or valuable thing, or who aids or abets any such act, is guilty of a felony and upon conviction thereof shall suffer death or shall be punished by imprisonment in the State prison for life without possibility of parole, at the discretion of the jury trying the same, in cases in which the person or persons subjected to such kidnaping suffers or suffer bodily harm or shall be punished by imprisonment in the State prison for life with possibility of parole in cases where such person or persons do not suffer bodily harm."

This section makes it unnecessary to determine whether the kidnaper intended to commit extortion or robbery at the time of the original seizure or carrying away. It is sufficient if the extortion or robbery was committed during the course of the abduction. Thus, whatever may have been the original motive of the kidnaping, if the kidnaper commits extortion or robbery during the kidnaping, he "holds or detains" his victim "to commit extortion or robbery" within the meaning of section 209.

■ The evidence shows without conflict that defendant forced Mrs. Jacobs to drive her automobile to a destination selected by him and upon arrival to walk up a hill where she was forcibly detained while defendant raped and robbed her. While Mrs. Jacobs lay on the ground after the defendant struck her, and therefore while the kidnaping was still con-

tinuing, he robbed her of her purse, wrist watch, and automobile. These acts clearly constituted kidnaping for the purpose of robbery as that crime is defined in Penal Code section 209. (*People* v. *Tanner*, 3 Cal.2d 279, 296 [44 P.2d 324].)

■ The trial court, in instructing the jury on the nature of the penalties for the crime, referred to the crime as "Kidnapping, as it has been defined to you," "Kidnapping as charged in Count Three of the Information" and "Kidnapping as charged in the Information." The crime had been previously defined, in the instructions, as follows:

"Section 209 of the Penal Code of the State of California provides so far as pertinent, as follows:

" 'Every person who seizes, confines, inveigles, entices, decoys, abducts, conceals, kidnaps or carries away any individual by an means whatsoever with intent to hold or detain, or who holds or detains such individual, to commit robbery is guilty of the crime of Kidnapping.''

Defendant contends that the jury could not reasonably be expected to remember the charges contained in the information, that the crime defined by the trial court was not kidnaping, but kidnaping for the purpose of robbery and that, therefore, the jury was not informed as to the offense for which it prescribed the death penalty. Even if the jury did not remember the words of the information, the trial court correctly defined the offense charged, namely, kidnaping for the purpose of robbery. It is immaterial that the crime was designated simply as "kidnapping" rather than "kidnapping for the purpose of robbery" since the latter is kidnaping within the meaning of section 209 (*People* v. *Tanner,* supra, at p. 296) and the instruction was concerned only with that type of kidnaping. Section 209 itself, after defining the particular offense in detail, describes it as "kidnapping." The trial court later, when instructing the jury as to the form of its verdict, referred to the crime as "Kidnapping for the Purpose of Robbery" and the jury used those words in its verdict. The jury was adequately informed of the nature of the crime with which defendant was charged and the instructions were neither confusing nor erroneous.

■ The finding of the jury that Mrs. Jacobs suffered bodily harm is clearly supported by the evidence. "*Bodily harm* is generally defined as 'any touching of the person of another against his will with physical force in an intentional, hostile and aggravated manner, or projecting of such force

against his person.' '' (*People* v. *Tanner, supra,* at p. 297.) The forcible rape itself was bodily harm. Any statement to the contrary in *People* v. *McIlvain,* 55 Cal.App.2d 322, 332 [130 P.2d 131] is disapproved. In addition to the rape defendant knocked Mrs. Jacobs to the ground with a vicious blow to her chin, which remained bruised and discolored for several days.

The judgment and the order denying the motion for a new trial are affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Schauer, J., and Spence, J., concurred.