[Crim. No. 8588.  Second Dist., Div. Four.  Dec. 11, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. BILLY RO-
MAIN SMITH, Defendant and Appellant.

Robert E. Krause for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Gilbert F. Nelson, Deputy Attorney General, for Plaintiff and Respondent.

BURKE, P. J.—Defendant was charged by information in four counts, with (1) kidnapping for the purpose of robbery, subjecting the victim to bodily harm while armed with a deadly weapon; (2) armed robbery; (3) attempted kidnapping, while armed with a deadly weapon; and (4) kidnapping, while armed with a deadly weapon. Defendant pleaded not guilty. At the close of the evidence count 2 was dismissed. Verdicts were returned finding defendant guilty as charged in counts 1, 3 and 4. Defendant waived jury trial on the issue of penalty and moved for a new trial which was denied. Probation was denied. Defendant was sentenced to the state prison on each offense for the terms prescribed by law, the sentences to run concurrently. The term for the violation of count 1 is for life without possibility of parole. Defendant appeals from the judgment of conviction and from the orders denying a new trial and probation.

On October 7, 1961, a married woman, the mother of three children, had been shopping at a market on Western Avenue at about 9:15 in the evening. While she was leaving the parking lot preparatory to returning home defendant approached her, opened the back door of her car, entered the car and pointing a gun at her directed her to drive to an area where houses were under construction. He ordered her to enter one of the unfinished houses, tied her hands behind her back, taped her mouth and disrobed her. He performed an act of sexual perversion upon her and then proceeded to rape her. Afterwards he took a wallet from her coat and removed $13 in bills; he admonished her not to scream and drove away in her car. The victim described the defendant as dressed in a leather jacket, wearing dark glasses and leather gloves. He removed his glasses when he raped her and she testified she could recognize his features. The victim stated that defendant had a voice she would never forget.

A second woman testified that on Friday night, November 10, 1961, she was washing her clothes at a laundromat at 228th Street and Western at about 11 p.m. She was alone. Suddenly a person appeared at the rear door and ordered her to come outside, pointing a revolver at her. She refused. The person left and returned later repeating his direction that she come outside. She still refused. She testified she could not see the face of this person because he wore large dark glasses shaped somewhat like goggles, that he was light-skinned, about 25 years of age and around 155 pounds in weight. Someone drove up to the laundromat and he left. She testified further that the height, weight and general appearance of the person who had menaced her was the same as the height, weight and general appearance of defendant. She identified defendant's gun in evidence as similar to the gun used to menace her. The arresting officers brought defendant to her house on the night of his arrest and instructed him to speak the words, ''Come here, I want you to take me some place.'' The intended victim testified the voice sounded familiar to her and when she heard it she trembled.

On the night of December 30, 1961, a third woman was washing her clothes in the same laundromat about midnight. A man was also using the laundry, and defendant appeared and asked him for help in getting his car started. Both men left the laundry and within a few minutes defendant reappeared at the back door of the laundromat with a gun in his hand and ordered the woman to come with him. The

woman testified the man was wearing gloves and a cap but was not wearing glasses. She identified defendant as being the man. She said defendant led her to a shack in a clump of trees about a block away and told her to take off her clothes. After commencing to undress she told him that she was menstruating. Defendant verified this by examining her and then left. The victim saw defendant drive away in a Ford automobile, either a '52, '53 or '54 model. A week later the arresting officers brought defendant to the victim's home and she testified she had no uncertainty in identifying him. She said his gun in evidence was similar to the gun used by defendant that night. The other man who had been in the laundromat at the time testified he could not identify the man who asked for help with his car except that he was a shorter man than himself, less than 5 feet, 8 inches tall, fair in complexion and probably under 30 years of age.

The arresting officer described the manner in which defendant was arrested by a stakeout posted on January 5 and 6, 1962. At about 1 a.m., watching from a trailer, a Ford car was observed passing and repassing the laundromat. The police stopped defendant who was driving the car, a 1954 sedan. A loaded gun was found over the glove compartment. A pair of gloves and sun glasses were over the sun visor on the driver's side. A leather thong lay within the round center of a roll of 2-inch adhesive tape on the front seat.

The officers substantiated the testimony of the victims concerning confrontation and identification.

Defendant was asked by the officers if the two women involved in counts 3 and 4 were the only women he had bothered and defendant stated they were, that he hadn't done them any harm, and that the gun was not loaded.

An alibi defense was offered by defendant who claimed he was visiting with his relatives on the evenings the crimes were committed. He denied admitting to the officers that he had bothered two of the women. He also denied commission of the offenses. He stated he was a cook and that he bought the adhesive tape for cuts on his fingers because he frequently cut them in his work; he bought the 2-inch width because the store had no narrower width in stock.

The principal grounds for appeal asserted by defendant are assigned errors of the trial court in giving and refusing instructions to the jury.

▉ Defendant asserts that the trial court committed prejudicial error in instructing on the crime of robbery after

count 2 (robbery) has been dismissed on motion of the district attorney at the completion of the taking of evidence. The court defined robbery twice, once in its instruction on count 1, kidnapping to commit robbery,[1] and again in separate instructions dealing specifically with the definition of robbery[2] and the degrees of robbery.[3] Having already defined robbery in the instruction dealing with count 1, it was unnecessary for the court to repeat the definition in a separate instruction. However, since the elements of robbery were still pertinent and the issue was before the jury for determination in connection with count 1, the repetition of the instruction was not prejudicial and did not constitute improper or distorted emphasis. (*People* v. *Carter*, 56 Cal.2d 549, 563 [15 Cal.Rptr. 645, 364 P.2d 477].) The cases cited by defendant dealing with the giving of instructions which find no support in the record, or as to issues not remaining in the case, are therefore not pertinent. Furthermore, defendant is not in position to complain, having tendered a number of instructions on the same subject, including the two the giving of which he now claims was prejudicial.[4]

Defendant contends that kidnapping for the purpose of robbery, robbery and attempted kidnapping are crimes requiring specific intent. (*People* v. *Camodeca*, 52 Cal.2d 142 [338 P.2d 903]; *People* v. *Chessman*, 38 Cal.2d 166, 183 [238 P.2d 1001]; *People* v. *Garcia*, 169 Cal.App.2d 368 [337 P.2d 100]; *People* v. *Sheasbey*, 82 Cal.App. 459 [255 P. 836].) Defendant asserts the court gave instructions as to general intent on count 2, robbery, and count 3, attempted kidnapping, and as to specific intent on count 1, kidnapping for purpose of robbery, and count 3, attempted kidnapping.

The court gave three successive instructions on the subject of intent, as follows:

"An essential element of the crime of robbery or attempted kidnapping or kidnapping [of] which the defendant is accused in counts 2, 3 & 4 of the information is intent, the law requiring that to constitute such a crime there must exist a union or joint operation of criminal conduct and criminal intent. However, this does not mean that one must intend all

---

[1]CALJIC No. 655.

[2]CALJIC No. 210.

[3]CALJIC No. 210-A (first paragraph only).

[4]CALJIC Nos. 210, 210-A, 72-B and 655 which the court gave, and 210-B, 210-C, 233, 233-A and 233-B which it refused.

the consequences of his conduct, or that he must know that such conduct is unlawful, to be guilty of a public offense such as that charged against the defendant in this case. The intent to do the forbidden thing constitutes the criminal intent. The law requires that to be guilty of crime, one must intend the conduct that fits the description of the crime and must engage in that conduct knowingly and wilfully.''[5]

''In the case of certain crimes it is necessary that, in addition to the intended act which characterizes the offense, the act must be accompanied by a specific or particular intent without which such a crime may not be committed.

''This [sic] in the crime of kidnapping for the purpose of robbery charged in count one of the information, a necessary element is the existence in the mind of the perpetrator of the specific intent to commit robbery and, unless such intent so exists, that crime is not committed.''[6]

''An attempt to commit a crime consists of two elements, namely, a specific intent to commit the crime, and a direct but ineffectual act done toward its commission.''[7]

■ The specific intent to commit robbery is a necessary element of kidnapping for purpose of robbery. (Pen. Code, § 209.) Therefore, the court properly instructed to this effect as to count 1.

■ Defendant points out that as to count 3 the jury was instructed on both general as well as specific intent; that such form of instruction was conflicting, confusing and prejudicial, citing *People* v. *Geibel*, 93 Cal.App.2d 147, 163 [208 P.2d 743], and *People* v. *Booth*, 111 Cal.App.2d 106 [243 P.2d 872]. In the cited cases the court gave both general and specific intent instructions which was held to be error. In *Geibel* the crime charged was forgery requiring a finding of an intent to defraud in order to convict. In *Booth*, the crime was lewd conduct with a child requiring a finding of an intent to arouse the passions of the accused or of the child. Thus, in the cases cited, under the general intent instruction, defendants in those cases could have been convicted without evidence or a finding of the specific intent required; this was held to be error, since the giving of an additional instruction indicating the specific intent required would not overcome the prejudicial effect of the erroneous instruction. In *Geibel*

---

[5]CALJIC No. 71, given at request of defendant with modification.

[6]CALJIC No. 72-B, given on the court's own motion.

[7]CALJIC No. 101 (first paragraph), given at request of People and defendant.

the court held it was impossible to determine whether the jury followed the law as correctly or incorrectly given to them; in *Booth*, the court held the error did not warrant a reversal because the nature of the acts was such as to preclude the belief they were committed without criminal intent.

We need not decide whether the rule of the cases cited is applicable to the crimes herein involved, since it is inconceivable that the jury could have been misled or that defendant could have been prejudiced by the instructions given. Here, as in *Booth*, the nature of the acts testified to on count 3 precludes any suggestion that they could have been committed innocently. The sole question here was whether defendant was the person who committed them.

Defendant also claims reversible error in the additions made by the trial court to the standard instruction on kidnapping for purpose of robbery.[8]

The trial court modified this instruction by adding thereto: "It is immaterial whether the kidnapper intended to commit robbery at the time of the original seizure or carrying away. It is sufficient if the robbery was committed during the course of the abduction."

Defendant points out that the cases of *People* v. *Brown*, 29 Cal.2d 555 [176 P.2d 929], and *People* v. *Knowles*, 35 Cal.2d 175 [217 P.2d 1], which appear to support this rule, were decided prior to the 1951 amendment to Penal Code section 209, which changed the law with respect to kidnapping for purpose of robbery.

The 1951 amendment to section 209 ( so far as is pertinent herein) requires an asportation for the crime of "kidnaping for the purpose of robbery." *People* v. *Taylor*, 135 Cal.App. 2d 201 [286 P.2d 952].) Prior to the 1951 amendment, mere

---

[8]CALJIC No. 655: "Any person who kidnaps or carries away any individual to commit robbery is guilty of a felony.

"Robbery is the felonious taking of personal property of another from his person or immediate presence, and against his will, accomplished by means of force or fear.

"If you should find the defendant guilty of the charge against him [under Count I of the information] you must also find whether or not the person kidnaped suffered bodily harm in connection with or as a result of the commission of the crime and state your decision in that respect in your verdict.

"'Bodily harm,' as that term is used in this instruction, means substantial bodily injury or damage to the body of a person who is the victim of such kidnaping by the application of physical force above and in addition to the force which is necessarily involved in the commission of such kidnaping."

*holding* or *detaining* an individual for purposes of robbery constituted kidnapping for purposes of robbery.

In *People* v. *Knowles, supra,* 35 Cal.2d 175, the court stated that there is no condition that robbery be premeditated as a part of a kidnapping for purpose of robbery and in *People* v. *Brown, supra,* 29 Cal.2d 555, the death penalty was affirmed on the ground that the taking of the victim's wrist watch made the abduction kidnapping to commit robbery, even if the original objective were rape and the intent to rob was only an afterthought. But both of these cases preceded the 1951 amendment when detention alone was sufficient to constitute kidnapping for purpose of robbery and no asportation was required.

Accordingly, an additional effect of the change in the statute is to make it necessary for the trier of fact to determine whether the kidnaper intended to commit robbery at the time of the original seizing. ■ In this respect the crime is similar to burglary where it is necessary to show that the entry was with the intent to commit larceny or any felony. An illegal entry but without such an intent is not a burglary (*People* v. *Jenkins,* 16 Cal. 431); similarly since the 1951 amendment to section 209, kidnapping without intent to rob constitutes kidnapping but not kidnapping for purpose of robbery; and a robbery during a kidnapping where the intent was formed after the asportation is a robbery and not a kidnapping for purpose of robbery.

■ Thus, in the instant case it was error for the court to have instructed the jury that it is immaterial whether the kidnaper intended to commit robbery at the time of the original seizure and that it was sufficient if the robbery was committed during the course of the abduction. We deem the error to have been prejudicial and to require a reversal on this count.

■ The court also added the following paragraph to the last mentioned instruction: "I further instruct you that forcible rape and forcible sex perversion do constitute bodily harm as referred to in this definition." This addition was in conformity with the evidence produced and was proper. (*People* v. *Brown, supra,* 29 Cal.2d 555.)

■ The court also instructed concerning the two forms of kidnapping,[9] and that if the jury should have a reasonable doubt as to whether or not defendant committed the acts

---

[9] CALJIC Nos. 661 and 651. (Pen. Code, §§ 207, 209.)

with such intent to commit robbery it should give defendant the benefit of the doubt and convict him of the lesser offense of simple kidnapping (under § 207). These instructions were proper.

■ Defendant contends certain instructions relating to circumstantial evidence were improperly refused since the prosecution relied heavily upon a pattern of incriminating circumstances including evidence of the stakeout, of the paraphernalia found in defendant's car, and evidence of identity in one count used to prove identity in another through similarity of height, weight and build. The record indicates the court gave a full and adequate instruction defining and comparing direct evidence and indirect or circumstantial evidence.[10] Such instruction was requested by defendant and was applicable to all counts. The court gave three additional instructions requested by defendant but modified them to make them applicable only to count 1: These were standard instructions pertaining to evidence susceptible of different interpretations,[11] test of sufficiency[12] and that each essential fact must be proved.[13] Defendant contends that the People relied substantially upon circumstantial evidence with respect to counts 3 and 4, attempted kidnapping and kidnapping, and therefore the court erred in limiting these three requested instructions to count 1 (kidnapping for purpose of robbery). We view the limitation as reasonable because the evidence with respect to counts 3 and 4 was primarily the direct testimony of eyewitnesses and an admission by defendant to the police that he had "bothered" the two victims involved in these particular counts. The officer testified that after this admission defendant added that he had not done them any harm and that the gun was not loaded. The circumstantial evidence was only corroborative. (*People* v. *Simeone*, 26 Cal.2d 795, 807 [161 P.2d 369].) As was said in *People* v. *Gould*, 54 Cal.2d 621, 629 [7 Cal.Rptr. 273, 354 P.2d 865], "The requested instructions on circumstantial evidence clearly do not refer to the problem of evaluating hearsay. They are unnecessary, and may be misleading, when the jury is to consider only whether the admission was made, and if made, whether it was true." Defendant cites *People* v. *Merkouris*,

[10]CALJIC No. 24.
[11]CALJIC No. 26.
[12]CALJIC No. 27.
[13]CALJIC No. 28.

46 Cal.2d 540 [297 P.2d 999], *People* v. *Yrigoyen*, 45 Cal.2d 46 [286 P.2d 1], and *People* v. *Neel*, 151 Cal.App.2d 1 [310 P.2d 986], to support him on this point; however, these were cases that depended substantially upon circumstantial evidence and are therefore not pertinent.

Here, while admittedly there was a substantial amount of corroborative circumstantial evidence, the People's case, on counts 3 and 4, was adequately based upon the direct testimony of the victims, outlined in the forepart of this opinion. The rule under such circumstances is enunciated in the cases of *People* v. *Jerman*, 29 Cal.2d 189, 197 [173 P.2d 805]; *People* v. *Lapara*, 181 Cal. 66 [183 P. 545]; *People* v. *Raber*, 168 Cal. 316, 320 [143 P. 317]; and *People* v. *Alexander*, 92 Cal.App.2d 230, 235 [206 P.2d 657]. In all of these cases, where there was both direct and circumstantial evidence, the courts held that there was no error in refusing to give instructions on circumstantial evidence.

■ Defendant contends the court erred in a modification which it made of an alibi instruction requested by defendant[14] by stating the latter portion of the instruction in the plural: "When one who was not at the place where a crime was committed at the time of its commission is later charged with having been present and having committed or taken part in committing such crime, his absence from the scene of the crime, if proved, is a complete defense that we call an alibi.

"The defendant [..............] in this case has introduced evidence tending to prove that he was not present at the time and place of the commission of the alleged offenses for which he is here on trial. If, after a consideration of all the evidence, you have reasonable doubt whether or not the defendant was present at the time the crimes *were* committed, he is entitled to an acquittal." (Italics added to show additions made by the court.) Defendant relied on his alibi as to each count and asserts that the jury was instructed to acquit only if there was a reasonable doubt of defendant's presence at the times and places of all crimes charged in the information. However, when one considers the instruction in its entirety, it does not lend itself to such a strained construction. There was no error here.

■ Defendant contends further that the court was in error in refusing defendant's proposed instruction on the subject of an included offense, since it is claimed the Peo-

---

[14]CALJIC No. 31.

ple's evidence on count 3, attempted kidnapping, showed the included offenses of criminal assault or assault with a deadly weapon. Here, as with the previous instruction complained of, it should be noted the instructions offered by defendant to the court were tendered in blank without such alterations or additions as would make them conform to the particular condition present in the case. The court is under no duty to rewrite an instruction. (*People* v. *De Santis,* 11 Cal.App.2d 86, 88 [52 P.2d 936].) A specific request is necessary for all instructions on a lesser offense. (*People* v. *Walker,* 155 Cal. App.2d 273, 275 [318 P.2d 77].)

Defendant urges the jury should have been instructed that the corpus delicti must be proved first before an admission could be considered. The court gave an instruction admonishing the jury to view with caution the testimony of any witness which purports to relate an oral admission of the defendant.[15] In the present case defendant did not question the proof that the crimes had been committed. The only issue raised was whether he was the person shown to be guilty of the offenses charged. The corpus delicti is completed when there is evidence of the existence of every element of the offense, even if there is no evidence as to who committed it. Accordingly, no instruction on the subject was necessary. (*People* v. *Cullen,* 37 Cal.2d 614, 624 [234 P.2d 1]; *People* v. *Travis,* 129 Cal.App.2d 29, 39-40 [276 P.2d 193].)

In addition to the foregoing claimed errors regarding instructions, defendant insists the court erred in denying the motion for a new trial based on affidavits of jurors charging that the jury received evidence out of court by conducting an experiment to determine if a person is a good judge of height and weight; also, on the fact that the bailiff communicated with the jury by answering the question "What happens if we can't reach a verdict?" by replying, "Well, it is up to the judge, but he will probably call it a mistrial."

The trial court viewed the experiment of the jury in estimating another person's height or weight merely as a part of their deliberative process and not as the reception of evidence out of court. With this view we concur. Likewise, the questioning of the bailiff was not prejudicial. The verdict of the jury cannot be impeached in this manner by the affidavit of a juror. (*People* v. *Gidney,* 10 Cal.2d 138 [73 P.2d 1186].)

---

[15]CALJIC No. 29-D (modified).

■ Defendant's motion for an advised verdict was based on contentions that the evidence was circumstantial, of dubious value, and that reasonable doubt had to result requiring an advised verdict of acquittal.

No error resulted from denial of a new trial based upon such purported insufficiency of evidence. The record reflects adequate facts, if believed by the jury, to establish guilt, and, while some evidence was circumstantial, substantial direct testimony was offered regarding identification and the perpetration of the acts. The trial court, therefore, could not preempt the province of the jury. (*People* v. *Santens*, 198 Cal. App.2d 592 [18 Cal.Rptr. 115]; *People* v. *Suter*, 43 Cal.App. 2d 444, 460 [111 P.2d 23].)

■ Defendant objects that the prosecutor was improperly allowed to ask a leading question of his own witness. While leading questions are ordinarily improper, it lies within the discretion of the trial court to permit exceptions. (Code Civ. Proc., § 2046.) An examination of the question in its setting discloses no abuse of this discretion.

Lastly, defendant contends the judge was not impartial and the prosecutor was guilty of prejudicial misconduct. Several purported instances of partiality and of misconduct are set forth. None contain any merit. With the exception noted as to the court's erroneous instruction on count 1, defendant was fairly tried and properly convicted.

The judgment is affirmed as to counts 3 and 4 and reversed as to count 1; the attempted appeals from the order denying a new trial and the order denying probation are dismissed.

Jefferson, J., and Kingsley, J., concurred.

The petitions of the respondent and of the appellant for a rehearing were denied December 26, 1963, and the petitions of both parties for a hearing by the Supreme Court were denied February 5, 1964.